996 F.2d 311
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Allen M. PARKER, Plaintiff-Appellant,
v.
HOUSING AUTHORITY OF KANSAS CITY, KANSAS, Robert Serra,
Defendants-Appellees,
and
David A. Vega, Barbara Collins, John P. Biscanin, Department
of Housing and Urban Development, Defendants.
 No. 92-3136.
 United States Court of Appeals, Tenth Circuit.
 June 9, 1993.
 
 Before McKAY, Chief Judge, HOLLOWAY, and BARRETT, Circuit Judges.
 ORDER AND JUDGMENT[1]
 McKAY, Chief Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff-appellant Allen M. Parker brought suit against appellees Housing Authority of Kansas City, Kansas, and Robert Serra, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 to -17, and 42 U.S.C. §§ 1981 and 1983, in his termination of employment with defendant Housing Authority. Plaintiff further claimed that defendants breached an implied contract of employment and wrongfully discharged him in violation of Kansas common law. The district court granted defendants' motion for summary judgment on all of plaintiff's claims. Plaintiff appeals and we affirm.
 
 
 3
 Plaintiff, a black male, was an employee of the Housing Authority from 1977 until March 3, 1988, when he was terminated. On February 11, 1988, plaintiff was suspended because of sexual harassment charges leveled by a female co-employee. At the time he was suspended, he was informed of the sexual harassment charges and that his employment would probably be terminated. Plaintiff retained an attorney who then called a press conference at which he announced that plaintiff had been suspended because of sexual harassment charges. After this event, another female co-employee also brought sexual harassment charges against plaintiff.
 
 
 4
 Prior to plaintiff's termination, defendants met with plaintiff and his attorney to discuss the harassment charges and plaintiff's pending termination. On the advice of his attorney, plaintiff refused to participate in this meeting. Consequently, on March 3, 1988, the Housing Authority, citing "cumulative employment problems," terminated him. Following this action, the Board of Commissioners of the Housing Authority held a post-termination hearing. Plaintiff, represented by counsel, participated in this four-day hearing. The Board upheld the termination decision. Plaintiff did not appeal.
 
 
 5
 Following the Board's decision, plaintiff filed a charge of racial discrimination against the Housing Authority with the Equal Employment Opportunity Commission. Subsequent to receiving a right to sue letter from the EEOC, plaintiff filed this suit charging racial and sexual discrimination against the Housing Authority and Robert Serra, Chairman of its Board of Commissioners.[2] On appeal, plaintiff claims the trial court erred in granting summary judgment on his claims of (1) discriminatory discharge, (2) denial of procedural due process, and (3) state law violations.
 
 
 6
 We review a grant of summary judgment de novo, applying the same legal standard used by the district court. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), cert. denied, 113 S.Ct. 635 (1992). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party moving for summary judgment must inform the court of the basis for its motion, and must "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." Thomas, 968 F.2d at 1024. Once the moving party has met its burden, the burden then shifts to the nonmoving party to show the existence of a genuine issue of material fact. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.1991). When, as in this case, the nonmoving party bears the burden of proof at trial, "Rule 56(e) ... [then] requires the nonmoving party to go beyond the pleadings and by [his] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Mares v. ConAgra Poultry Co., Inc., 971 F.2d 492, 494 (10th Cir.1992) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).
 
 
 7
 Plaintiff alleges that he was terminated because of the sexual harassment charges leveled against him, while two white employees, who also were charged with sexual harassment, were not disciplined. In order to establish a prima facie case of racial discrimination based on disparate treatment, plaintiff must show (1) that he was a member of a protected group; (2) that he was discharged for violating a work rule of the employer; and (3) that similarly situated nonminority employees who violated the same rule were treated differently. McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1260 (10th Cir.1988).
 
 
 8
 The Supreme Court established the allocation of burdens in Title VII cases alleging disparate treatment in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie case of discrimination. Id. at 802. If the plaintiff meets this burden, the burden of production shifts to the defendant to set forth a "legitimate, nondiscriminatory reason" for the employee's rejections. Id. Lastly, if the defendant meets its burden of production, the plaintiff must prove by a preponderance of the evidence that the reason stated by the defendant is a pretext for discrimination. Id. at 804. When alleging disparate treatment on the basis of race, plaintiff must establish that defendant's actions were racially motivated. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986 (1988).
 
 
 9
 In this case, the district court concluded that plaintiff met his burden of establishing a prima facie case of racial discrimination. See MacDonald v. Eastern Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir.1991) (holding that a plaintiff who succeeds in establishing a prima facie case in a discriminatory discharge case does not automatically survive summary judgment). Defendants claimed that plaintiff had a history of disciplinary problems prior to the charges of sexual harassment, and that a culmination of incidents led to his eventual termination. This constitutes a specific, legitimate business reason for its termination of plaintiff and satisfies defendants' burden of production. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 257-58 (1981) (holding that defendant only has a burden of production, not a burden of persuasion). Next, plaintiff contends that two white employees, also allegedly charged with sexual harassment, were not disciplined, thus presenting a triable issue regarding whether defendants' proffered reason for his termination was a pretext for racial animus.
 
 
 10
 Plaintiff argues that the issue of disparate treatment is a factual issue which could not be resolved on a motion for summary judgment. It was plaintiff's burden, however, in responding to defendants' summary judgment motion to go beyond the allegations in his complaint and designate specific facts which would establish a genuine issue for trial concerning his allegations of disparate treatment. Celotex, 477 U.S. at 324. In Celotex, the Supreme Court outlined this responsibility.
 
 
 11
 [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.
 
 
 12
 Id. at 322-23. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). This holds true even if the issue involves a party's state of mind. Id. at 255-56.
 
 
 13
 The district court concluded that plaintiff failed in his burden of showing that defendants' proffered reason was pretextual. We cannot adequately review this decision because the record on appeal does not contain plaintiff's response to defendants' motion for summary judgment. Plaintiff is responsible for designating those " 'papers filed in the district court which are relevant to specific arguments made in the briefs' " for inclusion in the appellate record. Green v. Johnson, 977 F.2d 1383, 1387 (10th Cir.1992) (quoting 10th Cir.R. 10.2.1). Plaintiff is represented by counsel and " 'it is counsel's responsibility to see that the record excerpts are sufficient for consideration and determination of the issues on appeal and the court is under no obligation to remedy any failure of counsel to fulfill that responsibility.' " Deines v. Vermeer Mfg. Co., 969 F.2d 977, 979 (10th Cir.1992) (quoting General Order, 10th Cir., Oct. 25, 1990, p. 5).
 
 
 14
 "A party having evidence tending to create a genuine issue of fact must present that evidence to the trial judge.... If he fails to do so, summary judgment may be properly granted against him." Otteson v. United States, 622 F.2d 516, 520 (10th Cir.1980). Without access to plaintiff's response in opposition, we cannot determine whether plaintiff satisfied his burden in the district court. See, e.g., Trujillo v. Grand Junction Regional Ctr., 928 F.2d 973, 976 (10th Cir.1991) (holding that, in a Title VII disparate impact case, the reviewing court, lacking a trial transcript, must accept district court's factual findings as correct).
 
 
 15
 Once the defendant satisfies its burden of production, "the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." Burdine, 450 U.S. at 255 (footnote omitted). This burden then merges with plaintiff's burden of proving intentional discrimination. Id. at 256. Because there is no evidence that the white employees accused of sexual harassment were similarly situated to plaintiff, there is no evidence of disparate treatment.
 
 
 16
 Plaintiff alleges that Serra and other members of the Board of Commissioners made remarks which indicated their desire to remove plaintiff from his position. He further alleges that the Housing Authority's assertions regarding his poor work record were unsubstantiated and therefore pretextual. However, these allegations are conclusory. Plaintiff presented no evidence that the negative remarks and actions of Housing Authority officials were in any way motivated by racial animus. See Sanchez v. Philip Morris Inc., Nos. 91-6354 & 91-6371, 1993 WL 118443, at * 3 (10th Cir. Apr. 20, 1993) (once a plaintiff proves that the employer's proffered reasons for its actions are pretextual, plaintiff must then prove that the employer's motive violates Title VII). Personality conflicts or verbalized desires to fire an employee cannot supply a basis for presuming intentional racial discrimination. Id. We can discern no evidence that any of the alleged remarks, even if taken as true, were indicative of any improper motive, real or implied.
 
 
 17
 Based on the record before us, we must conclude that plaintiff did not make a sufficient showing in opposition to summary judgment to create a genuine issue of material fact. Accordingly, we conclude that the district court did not err in granting summary judgment as to plaintiff's Title VII claims.
 
 
 18
 We have reviewed the record on appeal and can discern no error in the district court's decisions regarding plaintiff's procedural due process and state law violation claims. Therefore, the judgment of the district court as to these remaining issues is AFFIRMED for substantially the same reasons set forth in its Memorandum and Order dated March 16, 1992, a copy of which is attached.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF KANSAS
 
 19
 Allen M. Parker, Plaintiff,
 
 
 20
 vs.
 
 
 21
 Housing Authority of Kansas City, Kansas, et al., Defendants.
 
 
 22
 Civil Action No. 89-2212-V.
 
 MEMORANDUM AND ORDER
 
 23
 This case is before the court on the motion (Doc. 108) of defendants Housing Authority of Kansas City, Kansas, and Robert Serra for summary judgment pursuant to Fed.R.Civ.P. 56(b). Plaintiff Allen M. Parker has responded (Doc. 122) and opposes defendants' motion. The motion is granted.
 
 
 24
 In this employment discrimination action, plaintiff claims that defendants terminated his employment because of his race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiff also claims that, in terminating his employment, defendants deprived him of protected property and liberty interests without due process of law in violation of 42 U.S.C. § 1983. Plaintiff further claims that defendants breached an implied contract of employment and wrongfully discharged him in violation of Kansas state common law. In their motion, defendants contend that they are entitled to summary judgment on plaintiff's claims.
 
 
 25
 A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing," that is, pointing out to the district court, that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, "a party opposing ... may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id.
 
 
 26
 The uncontroverted facts of the case, as established by the parties in accordance with D.Kan.Rule 206(c), appear as follows:
 
 
 27
 Plaintiff is a black male. He was employed by defendant Housing Authority from 1977 until his employment was terminated on March 3, 1988. During his tenure with defendant Housing Authority, plaintiff was Director of the Section 8 Program and Director of Housing Management. Defendant Housing Authority is an agency of the City of Kansas City, Kansas, and is authorized to locate and maintain housing for lower income residents of Kansas City, Kansas. Defendant Serra was, at the time of plaintiff's termination, Chairman of the Board of Commissioners of defendant Housing Authority.
 
 
 28
 On February 11, 1988, defendant Housing Authority suspended plaintiff. At that time, plaintiff was informed that charges of sexual harassment had been brought against him by Ann Pihner, a co-employee, and that his employment would probably be terminated. Thereafter, on February 17, 1988, plaintiff filed a Petition in the District Court of Wyandotte County, Kansas, to obtain an order preventing defendant Housing Authority from terminating his employment. In the Petition filed in that case, plaintiff averred that he had been suspended because sexual harassment charges had been asserted against him.
 
 
 29
 On February 18, 1988, plaintiff's attorney called a press conference. At the press conference, he informed the press of the sexual harassment charges brought against plaintiff and of the suspension. His comments, in addition to those made by the Executive Director of defendant Housing Authority, appeared in an article in the February 19, 1988, edition of the Kansas City Kansan newspaper. At about this same time, plaintiff was given a copy of Ann Pihner's written memorandum in which she specified what her sexual harassment claims were. Subsequent to this time, Edwina Dupree, a second co-employee, also brought charges that plaintiff had, over a period of time, sexually harassed her.
 
 
 30
 In late February, 1988, plaintiff and the Executive Director met to discuss the sexual harassment charges and plaintiff's impending termination. On the advice of counsel, who was present at the meeting, plaintiff refused to participate in the meeting. At the conclusion of the meeting, plaintiff's employment with defendant Housing Authority was officially terminated, effective March 3, 1988. The reasons given for the termination were: (1) unsatisfactory service; (2) incompetence; (3) gross neglect of duty; (4) breach of duty owed to defendant Housing Authority; (5) misconduct; and (6) willful and intentional action which was substantially adverse to defendant Housing Authority. Also cited were plaintiff's negative work record and the charges of sexual harassment. Plaintiff's employment was terminated for what was termed "cumulative employment problems."
 
 
 31
 Following the termination of plaintiff's employment, the Board of Commissioners of defendant Housing Authority conducted a hearing to review the termination decision. Defendant Serra, as chairman of the board, presided. At the hearing, plaintiff was represented by counsel. He was permitted to make opening and closing statements, cross examine witnesses, and to present witnesses and documents in his behalf. He was also allowed, prior to the hearing, to depose defendant Housing Authority's Executive Director. At the conclusion of the hearing, the board voted 5-2 upholding the decision to terminate plaintiff's employment. Plaintiff did not appeal the board's decision.
 
 
 32
 On August 10, 1988, with the assistance of counsel, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Kansas Commission on Civil Rights (KCCR), alleging that defendant Housing Authority had unlawfully terminated his employment because of his race. Thereafter, the EEOC issued plaintiff a right to sue notice. On May 12, 1989, within ninety days of receiving the right to sue notice, plaintiff instituted this lawsuit.
 
 
 33
 In this case, plaintiff claims that his employment was unlawfully terminated on the basis of his race and sex in violation of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. He also claims that he was deprived of protected property and liberty interests in continued employment without due process of law in violation of section 1983. He further asserts that defendants breached an implied contract of employment and wrongfully discharged him in violation of Kansas state common law. As remedies, plaintiff seeks various damages from defendants. As noted above, defendants move the court for summary judgment on each of plaintiff's claims. The court will address each of plaintiff's claims, separately, in light of defendants' contentions in support of their motion for summary judgment.
 
 I. THE TITLE VII CLAIMS
 
 34
 Plaintiff claims that the termination of his employment was unlawfully motivated by his race and sex in violation of Title VII, 42 U.S.C. § 2000e-2(a). Defendant Serra contends that he is entitled to summary judgment on the Title VII claims because, with respect to the charges brought against him, plaintiff failed to exhaust administrative remedies before either the EEOC or the KCCR. Defendant Housing Authority contends that it is entitled to summary judgment on plaintiff's Title VII claims because plaintiff failed to exhaust administrative remedies with respect to his claim of sex discrimination and because he cannot, as a matter of law, establish a prima facie case of race discrimination. The court will address defendants's contentions separately.
 
 A. DEFENDANT SERRA'S CONTENTION
 
 35
 Under Title VII, a civil action may be brought "against the respondent named in the charge if the civil action is brought within ninety (90) days of receipt of a right to sue notice...." 42 U.S.C. § 2000e-5(f)(1). Generally, a party not named in the EEOC charge is not subject to suit in a private civil action for the conduct complained of in the charge. Harris v. First Nat. Bank of Hutchinson, Kan., 680 F.Supp. 1489, 1495 (D.Kan.1987). Although EEOC charges are construed liberally, such charges are construed more narrowly where counsel assists the complainant in preparing the charge and is familiar with the hierarchical structure of the employer. See Id. at 1495-96. Compare Romero v. Union Pacific R. Co., 615 F.2d 1303, 1311-12 (10th Cir.1980).
 
 
 36
 Here, it is uncontroverted that counsel assisted plaintiff with the preparation of his EEOC charge and that he knew that defendant Serra was Chairman of the Board of Commissioners of defendant Housing Authority. It is equally uncontroverted that defendant Serra's name appears nowhere on the August 10, 1988, charge of discrimination filed with the EEOC and KCCR. For those reasons, the court concludes that plaintiff has failed to exhaust administrative remedies with respect to his Title VII claims against defendant Serra. Accordingly, defendant Serra is entitled to summary judgment on the Title VII claims asserted against him.
 
 
 37
 B. DEFENDANT HOUSING AUTHORITY'S CONTENTIONS
 
 1. Plaintiff's Sex Discrimination Claim
 
 38
 The general rule is that the EEOC charge limits the scope of the complaint in any civil action that the complainant later files. Moore v. Norfolk and Western R. Co., 731 F.Supp. 1015, 1017-18 (D.Kan.1990). However, on occasion, courts have held that "[n]ew charges in the complaint are cognizable ... if they are 'like or reasonably related to the allegations of the charge and growing out of such allegations.' " Jensen v. Board of County Commissioners, 636 F.Supp. 293, 300 (D.Kan.1986) (quoting Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164, 167 (7th Cir.1976)).
 
 
 39
 It is uncontroverted that plaintiff's EEOC charge only alleges that defendant Housing Authority terminated his employment on the basis of his race. Nowhere in the complaint can it be inferred that plaintiff claimed to be the victim of sex discrimination. The court concludes that plaintiff's claims of race discrimination and sex discrimination are separate and distinct, see Carter v. Sedgwick County, Kan., 705 F.Supp. 1474, 1477 (D.Kan.1988), and that plaintiff failed to exhaust administrative remedies with respect to his claim of sex discrimination. For those reasons, the court concludes that defendant Housing Authority is entitled to summary judgment on plaintiff's Title VII claim insofar as it states a claim of sex discrimination.
 
 2. Plaintiff's Race Discrimination Claim
 
 40
 To establish a prima facie case of race discrimination, plaintiff must show (1) that he is a member of a protected class, (2) that he was discharged for violating a work rule of defendant Housing Authority, and (3) that similarly situated white employees who violated the same rule were treated differently than plaintiff. McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1260 (10th Cir.1988); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Plaintiff has the burden of establishing a prima facie case by a preponderance of the evidence. McDonnell Douglas, 411 U.S. at 802.
 
 
 41
 Once plaintiff establishes a prima facie case, the burden of production shifts to defendant Housing Authority. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Defendant Housing Authority must articulate, through admissible evidence, a legitimate nondiscriminatory reason for its employment decision. Id. at 253. Once defendant Housing Authority articulates the reason for its employment action, plaintiff must show that the stated reason was merely a pretext for proscribed discrimination. Id. Despite the shifting burdens, the burden of proof remains at all times with plaintiff. Id.
 
 
 42
 Plaintiff has established a prima facie case of race discrimination. Plaintiff is a black male and a member of a protected class. Plaintiff's employment was terminated for what was called "cumulative employment problems." The termination was undeniably precipitated by the sexual harassment charges asserted against him. Plaintiff has shown that two white employees who were also charged with sexual harassment were not terminated. Under the framework described above, plaintiff has, at least for the purposes of this motion, established a prima facie case of race discrimination.
 
 
 43
 In response to the prima facie case, defendant Housing Authority has articulated a legitimate nondiscriminatory reason for terminating plaintiff's employment. Defendant Housing Authority has shown that plaintiff had a negative employment record. Plaintiff was, on several occasions, placed on disciplinary probation. In 1986, his department was severely criticized by HUD. He was, at another time, suspended for engaging in a public altercation with a fellow employee. He was then accused of sexual harassment by two women employees. His termination, precipitated by those charges, was based on "cumulative employment problems" which were detailed by defendant Housing Authority. Defendant Housing Authority has also shown that the two white employees in question had never been disciplined by it before they were charged with sexual harassment. The white employees, although punished, were not terminated for that reason. Defendant Housing Authority has stated a legitimate nondiscriminatory reason for the termination of plaintiff's employment.
 
 
 44
 Plaintiff has failed to show that defendant's legitimate nondiscriminatory reason was a pretext for proscribed discrimination. Plaintiff has not shown that he had anything but a negative work record. Plaintiff has not shown that the two white employees were in a similar situation as he, in that they did not have negative work records and had not been disciplined previously. Furthermore, plaintiff has not shown that his discrimination was racially motivated. Mere disagreement with an employer's adverse employment decision is not sufficient to establish pretext. Accordingly, defendant Housing Authority is entitled to summary judgment on plaintiff's Title VII claim of race discrimination.
 
 II. THE 42 U.S.C. § 1981 CLAIMS
 
 45
 Plaintiff claims that his employment was unlawfully terminated in violation of section 1981. Defendants contend that they are entitled to summary judgment on this claim under Patterson v. McLean Credit Union, 491 U.S. 164 (1989). The court agrees. In Patterson, the Supreme Court held that section 1981 protects only the rights to make and enforce contracts and does not extend to postformation conduct. The Tenth Circuit reads Patterson to bar section 1981 claims for racially motivated discharges. Trujillo v. Grand Junction Regional Center, 928 F.2d 973, 976 (10th Cir.1991). For that reason, plaintiff's section 1981 claims fail.
 
 III. THE 42 U.S.C. § 1983 CLAIMS
 A. PROCEDURAL DUE PROCESS
 
 46
 Plaintiff claims that defendant's termination of his employment deprived him of a property and liberty interest without due process of law in violation of 42 U.S.C. § 1983. The gravamen of his complaint is that he was not afforded an adequate pretermination or post-termination hearing. Defendants contend that they are entitled to summary judgment because plaintiff possessed no property or liberty interest in his continued employment. Defendants also contend that they are entitled to summary judgment because plaintiff was afforded procedural due process. The court agrees that plaintiff was afforded procedural due process.[1]
 
 
 47
 The Fourteenth Amendment's guarantee of procedural due process applies when a constitutionally protected property or liberty interest is at stake. As the Supreme Court has held:
 
 
 48
 The requirements of procedural due process apply to deprivations of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of hearing is paramount.
 
 
 49
 Board of Regents v. Roth, 408 U.S. 564, 569 (1972). At issue here is whether, under the facts presented, plaintiff was afforded procedural due process.
 
 
 50
 In Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), the Supreme Court recognized that a public employee with a protected interest[2] in continued employment is entitled to a pretermination hearing. Id., at 542. The court explained that the pretermination hearing need not be "elaborate" nor need it "definitively resolve the propriety of discharge." Id. at 545. The purpose of the pretermination hearing is to be "an initial check against mistaken decisions--essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. at 545-46. In an employee setting, due process can be reduced to two essential requirements: notice and an opportunity to be heard. Id. at 546. The "employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. Anything more than this would unnecessarily interfere with the government's interest in effective operations. Id.; see Kearn v. City of Concordia, Kan., 90-1461-C, 1991 WL 241178 (D.Kan. Oct. 31, 1991).
 
 
 51
 The Tenth Circuit has explained the Loudermill decision as follows:
 
 
 52
 The pretermination hearing is merely the employee's chance to clarify the most basic misunderstanding or to convince the employer that termination is unwarranted. The pretermination hearing is intended to supplement, not duplicate, the more elaborate post-termination hearing. Because the post-termination hearing is where the definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point. To duplicate those protections at the pretermination stage would cause unnecessary delay and expense while diffusing the responsibility for the ultimate decision to terminate the employee. The idea of conducting two identical hearings runs counter to traditional principles of adjudication.
 
 
 53
 Powell v. Mikulecky, 891 F.2d 1454, 1458 (10th Cir.1989). Pursuant to its reading of Loudermill, the Tenth Circuit has, on several occasions, found the pretermination hearing requirement to be satisfied by meetings and opportunities that fall well short of a formal hearing. See Derstein v. State of Kansas, 915 F.2d 1410, 1413-14 (10th Cir.1990), cert. denied, 111 S.Ct. 1391 (1991); Powell v. Mikulecky, 891 F.2d at 1459-62; Melton v. City of Oklahoma City, 879 F.2d 706, 718-19 (10th Cir.1989), reh'g en banc on other grounds, 928 F.2d 920 (10th Cir.), cert. denied, 112 U.S. 296 (1991); Seibert v. Univ. of Oklahoma Health Sciences, 867 F.2d 591, 596-99 (10th Cir.1989).
 
 
 54
 In the light of those cases, the uncontroverted facts of the case show that plaintiff was afforded procedural due process in this case. After plaintiff was informed that charges of sexual harassment had been brought against him, he was given a memorandum, written by the woman bringing the charges against him, which specified her charges. Before he was officially terminated, a meeting was scheduled between plaintiff and the Executive Director of defendant Housing Authority. The purpose of the meeting was to discuss the charges and the impending termination. At the meeting, conducted in late February, 1988, plaintiff was again informed of the charges brought against him and that he was being terminated, effective at a later date, for "cumulative employment problems." At the meeting, plaintiff was given the opportunity to address the charges brought against him and to present his side of the story. Plaintiff, on the advice of counsel, refused to participate in that meeting.
 
 
 55
 After his termination became effective, plaintiff was given a post-termination hearing before the full Board of Commissioners of defendant Housing Authority. The purpose of the post-termination hearing was to review the decision to terminate plaintiff. At the post-termination hearing, plaintiff was represented by counsel, called witnesses on his behalf, presented documentary evidence, and had the opportunity to cross examine witnesses. Plaintiff was also allowed to depose defendant Housing Authority's Executive Director prior to the post-termination hearing. At the conclusion of the hearing, the board voted 5-2 to sustain plaintiff's termination. Although he had the opportunity to appeal this decision, plaintiff never did so.
 
 
 56
 Under current law, the court concludes that the totality of the procedures and opportunities which defendant Housing Authority afforded plaintiff were sufficient to satisfy constitutional requirements. Plaintiff was informed of the charges brought against him. Plaintiff was not terminated for a reason that he did not know. Plaintiff was not terminated without first being given the opportunity to present his side of the story. The fact that plaintiff refused to participate in his pretermination hearing does not alter the fact that he was afforded all that the due process clause requires. For the stated reasons, defendants are entitled to summary judgment on plaintiff's section 1983 claims insofar as they relate to plaintiff's due process rights.
 
 B. EQUAL PROTECTION--RACE DISCRIMINATION
 
 57
 Plaintiff also claims that he was discriminated against on the basis of his race in violation of 42 U.S.C. § 1983. In racial discrimination suits "the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in McDonnell Douglas, whether the case is brought under section 1983 ... or Title VII." Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir.1991). As shown above, plaintiff has failed to show that his termination was racially motivated in violation of Title VII. Defendants are thus entitled to summary judgment on plaintiff's section 1983 race discrimination claims, as well. Id.
 
 IV. THE PENDENT STATE LAW CLAIMS
 
 58
 Plaintiff claims that defendants breached an implied contract of employment and wrongfully discharged him in violation of Kansas state common law. Defendants contend that they are entitled to summary judgment on these claims because plaintiff failed to notify the city of these claims before bringing suit as required by Kansas law, K.S.A. 12-105b. The court agrees. It is uncontroverted that plaintiff failed to notify the city of his breach of contract claim as required by K.S.A. 12-105b. It is likewise uncontroverted that plaintiff failed to notify the city of his wrongful discharge tort claim as required by K.S.A. 12-105b. Accordingly, defendants are entitled to summary judgment on the pendent state law claims. See Unified School Dist. No. 457 v. Phifer, 729 F.Supp. 1298, 1306 (D.Kan.1990).
 
 
 59
 IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. 108) is granted. The case is hereby dismissed.
 
 
 60
 Copies of this Memorandum and Order shall be mailed to counsel of record for the parties.
 
 
 61
 IT IS SO ORDERED.
 
 
 62
 Dated at Kansas City, Kansas, this 16 day of March, 1992.
 
 
 63
 /s/ G.T. Van Bebber
 
 G.T. VAN BEBBER
 United States District Judge
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [2]
 The district court granted summary judgment to defendant Serra on plaintiff's Title VII claims because plaintiff failed to exhaust his administrative remedies as to Serra. The court also granted all defendants summary judgment as to plaintiff's claims of sex discrimination because plaintiff failed to present this claim to the EEOC. Plaintiff does not appeal these decisions
 
 
 [1]
 Because the court concludes that plaintiff was afforded procedural due process in this case, it will not address whether plaintiff possessed a protected property or liberty interest in his continued employment
 
 
 [2]
 For the purposes of this analysis only, the court will assume--without deciding--that plaintiff had a protected interest in his continued employment with defendant Housing Authority